UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PEEK-A-BOO LOUNGE OF
BRADENTON, INC., et al.,

      **Plaintiffs,**

vs.                                         Case No. 8:05-CV-1707-T-27TBM

MANATEE COUNTY, FLORIDA,

      **Defendant.**
_____/

## ORDER

**BEFORE THE COURT** is Manatee County's notice (Dkt. 65) of renewing Defendant's motion for summary judgment (Dkt. 31) and motion to strike affidavits (Dkt. 47). Plaintiffs responded in opposition to the motion for summary judgment (Dkt. 44) and motion to strike (Dkt. 51). Defendant filed a supplemental brief in support of the renewed motion for summary judgment (Dkt. 66). For the reasons that follow, Defendant's motion for summary judgment (Dkt. 31) is **GRANTED** and Plaintiffs' motion to strike (Dkt. 47) is **DENIED** as moot.

### *Background*

Plaintiffs are three adult dancing establishments which challenge the constitutionality of certain 2005 amendments to Manatee County's Adult Entertainment Code on facial and as-applied grounds. Two of the Plaintiffs brought an earlier action which involved different ordinances. A summary of the prior action is appropriate to set the stage for Plaintiffs' latest challenge.

In the late 1990s, the County amended its Adult Entertainment Code, enacting Ordinance 98-46, which established certain physical requirements for premises used for adult dancing. A few months later, the County adopted a generally-applicable public nudity ordinance, 99-18. That

1

ordinance prohibited anyone, including exotic dancers, from appearing in public in "G-strings, T-backs, dental floss, and thongs."

Peel-A-Boo Lounge of Bradenton, Inc. and M.S. Entertainment, Inc. d/b/a Temptations II commenced an action challenging the constitutionality of Ordinances 98-46 and 99-18. This Court, finding the ordinances constitutional, granted summary judgment in favor of the County. The Eleventh Circuit reversed, holding that the adult dancing establishments had submitted sufficient evidence to cast direct doubt on the County's rationale for adopting the general public nudity ordinance. Accordingly, the Circuit Court remanded for a determination of whether, in light of Plaintiffs' evidence, "there remains credible evidence upon which the County could reasonably rely in concluding that the ordinance would combat the secondary effects of adult entertainment establishments in Manatee County." *Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, Fla.*, 337 F.3d 1251, 1273 (11th Cir. 2003).

Following remand, the County overhauled the Adult Entertainment Code. The County enacted a new ordinance, Ordinance 05-21, which changed the name of the code to the "Sexually Oriented Business Code." The new ordinance established a different set of regulations governing the manner in which sexually oriented businesses may operate in Manatee County. Under Ordinance 05-21, sexually oriented businesses are exempt from the general public nudity ordinance, 99-18, which Plaintiffs had challenged in the prior *Peek-A-Boo* action. The prior action was rendered moot and therefore was dismissed.

Plaintiffs' present action challenges the new ordinance, 05-21. In adopting Ordinance 05-21, Manatee County relied on substantial evidence.[1] The Board reviewed and considered the findings,

---

[1] In contrast to Ordinance 05-21, the County had not relied on any evidence when enacting Ordinance 98-46. *Peek-A-Boo*, 337 F.3d at 1266-67. When enacting Ordinance 99-18, the County determined that public nudity "increases incidents of prostitution, sexual assaults and batteries, [and] other criminal activity." *Id.* at 1269-70. In making this

2

interpretations, and constructions of twenty-five judicial opinions. (Dkt. 32-14 – Dkt. 34-7). *See* Manatee County, Fla. Code of Ordinances § 2-2.5-1(b). The Board reviewed and considered seventeen secondary-effects reports, reports on physical abuse of exotic dancers, affidavits from a private investigator, and various other reports and materials. (Dkt. 32-10 – Dkt. 32-13; Dkt. 34-8 – Dkt. 37-16). *See* § 2-2.5-1(b). The Board held a four-hour public hearing, during which expert witnesses testified in support of and against the proposed ordinance. (Dkt. 31-4). In support of the ordinance, Richard McCleary, Ph.D., a criminologist and university professor, and Shawn Wilson, a real estate appraiser, testified about several adverse secondary effects associated with sexually oriented businesses. (Dkt. 31-4). Plaintiffs opposed the adoption of Ordinance 05-21. They presented the testimony of Randy D. Fisher, Ph.D., an associate professor of Psychology and Director of the Survey Research Laboratory at the University of Central Florida, Terry A. Danner, Ph.D., Chair of the Department of Criminology at Saint Leo University, Judith Lynne Hanna, Ph.D., an anthropologist and dance scholar, and Richard Schauseil, a licensed real estate agent. (Dkt. 31-4).

After considering all of the evidence and testimony, the Board found:

> Sexually oriented businesses, as a category of commercial uses, are associated with a wide variety of adverse secondary effects including, but not limited to, personal and property crimes, public safety risks, prostitution, potential spread of disease, lewdness, public indecency, illicit sexual activity, illicit drug use and drug trafficking, undesirable and criminal behavior associated with alcohol consumption, negative impacts on surrounding properties, litter, and sexual assault and exploitation.

§ 2-2.5-1(b)(1). The Board found that the County had a substantial government interest in preventing and abating each of these negative secondary effects and that the County's interest extended beyond

---

finding, the County relied on a report of the Florida Family Association entitled, "Evidence of Secondary Adverse Effects of Sexually Oriented Businesses," which included testimony from the Pinellas County Sheriff and the Director of Communicable Diseases of the Pinellas County Health Department. *Id*. at 1270.

3

currently existing secondary effects to include effects that could occur in the future. § 2-2.5-1(b)(2). Accordingly, the Board adopted Ordinance 05-21 "to regulate sexually oriented businesses in order to promote the health, safety, and general welfare of the citizens of the County, and to establish reasonable and uniform regulations to prevent the deleterious secondary effects of sexually oriented businesses within the County." § 2-2.5-1(a).

In substance, Ordinance 05-21 establishes a licensing scheme for sexually oriented businesses, sets forth physical requirements for certain business premises, and restricts hours of operation. §§ 2-2.5-4 - 2.2.5-18. The ordinance prohibits the sale, use, or consumption of alcohol on the premises of sexually oriented businesses. § 2-2.5-18(d). Ordinance 05-21 contains specific nudity restrictions for sexually oriented businesses. In particular, all persons are prohibited from appearing in sexually oriented businesses in a "state of nudity" which is defined as "the showing of the human male or female genitals, pubic area, vulva, or anus with less than a fully opaque covering, or the showing of the female breast with less than a fully opaque covering of any part of the nipple and areola." §§ 2-2.5-2, 2-2.5-18(a). Employees of sexually oriented businesses may appear "semi-nude" which is "a condition in which a person is not nude, but is showing a majority of the female breast below a horizontal line across the top of the areola and extending across the width of the breast at that point, or is showing the majority of the male or female buttocks."[2] §§ 2-2.5-2, 2-2.5-18(b). However, those appearing semi-nude must "remain[] at least six (6) feet from any patron or customer and on a stage that is at least eighteen (18) inches from the floor and in a room of at least one thousand (1,000) square feet." § 2-2.5-18(b).

Plaintiffs filed this action to invalidate Ordinance 05-21 on constitutional grounds. Manatee County moved for summary judgment. (Dkt. 31). The County submitted substantial evidence in

---

[2] It is not disputed that the ordinance permits dancers to perform in pasties and a G-string.

support of its motion, including five volumes of the legislative record and an additional volume of deposition testimony, affidavits, expert reports, and post-enactment evidence. (Dkt. 31-2 – Dkt. 37-16). Plaintiffs argue that the ordinance is unconstitutional on its face and as applied to them. Specifically, Plaintiffs argue that the County was unreasonable in believing that the evidence in the legislative record was relevant to its rationale for enacting the ordinance. Plaintiffs submitted affidavits from four expert witnesses (Dkt. 45) which they contend cast direct doubt on the County's rationale for the ordinance.[3] After the summary judgment motion was fully briefed, Plaintiffs' counsel conceded at a status conference that the Eleventh Circuit's recent opinion in *Daytona Grand, Inc. v. City of Daytona Beach, Fla.*, 490 F.3d 860 (11th Cir. 2007) "really essentially does away with the as applied argument." (Dkt. 66-2, Status Conf. Tr. 6:8-10 (Jan. 15, 2008)).

### *Standard*

The summary judgment standards set forth in Rule 56 of the Federal Rules of Civil Procedure and articulated in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) apply to constitutional challenges to the validity of an ordinance. *See Peek-A-Boo*, 337 F.3d at 1272. Under those standards, summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322; Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the

---

[3] The County moved to strike the affidavits on the ground that they contain legal argument and previously undisclosed expert opinions. (Dkt. 47). The County's objection to the inclusion of legal argument in the affidavits is well-taken. *Cf. Cook ex rel. Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005) (expert testimony inappropriate to offer "nothing more than what lawyers for the parties can argue in closing arguments"). The Court has considered the affidavits, with the exception of portions containing legal argument. The affidavits fail to create a genuine issue of material fact.

nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Id.* Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24. The Court will not weigh the evidence or make findings of fact. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). "The court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party." *Id.*

## *Analysis*

Nude dancing constitutes expressive conduct, although "it falls only within the outer ambit of the First Amendment's protection." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000) (plurality opinion).[4] Accordingly, ordinances targeting the secondary effects of sexually oriented businesses will be upheld if they comply with certain constitutional standards. *See Peek-A-Boo*, 337 F.3d at 1264. The standard to be applied depends on the type of ordinance. *See id.*

Zoning ordinances which regulate "the conditions under which adult entertainment businesses may operate should be evaluated under the standards for time, place, and manner regulations" set forth in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986). *Id.* The *Renton* test involves three parts:

> first, the court must determine whether the ordinance constitutes an invalid total ban or merely a time, place, and manner regulation;

---

[4] "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977) (quotation marks omitted). The plurality's opinion is the holding of the Supreme Court in *City of Erie v. Pap's A.M. Peek-A-Boo*, 337 F.3d at 1261.

> second, if the ordinance is determined to be a time, place, and manner regulation, the court must decide whether the ordinance should be subject to strict or intermediate scrutiny; and third, if the ordinance is held to be subject to intermediate scrutiny, the court must determine whether it is designed to serve a substantial government interest and allows for reasonable alternative channels of communication.

*Id.*

In contrast, content-neutral public nudity ordinances should be evaluated under the test set forth in *United States v. O'Brien*, 391 U.S. 367 (1968). *Id.* Under the *O'Brien* test, "public nudity ordinances that incidentally impact protected expression should be upheld if they (1) are within the constitutional power of the government to enact; (2) further a substantial governmental interest; (3) are unrelated to the suppression of free expression; and (4) restrict First Amendment freedoms no greater than necessary to further the government's interest." *Id.*

Plaintiffs do not argue that the portions of Ordinance 05-21 which are subject to the *Renton* test constitute a total ban or fail to allow reasonable alternative channels of communication. Indeed, the ordinance does not ban sexually oriented businesses but rather regulates the manner in which they operate. To the extent Plaintiffs argue that strict scrutiny should apply, they are incorrect. Under *Renton,* an ordinance regulating conduct within adult businesses is content neutral "if it is aimed at reducing the negative secondary effects associated with these establishments." *Fly Fish, Inc. v. City of Cocoa Beach*, 337 F.3d 1301, 1308 (11th Cir. 2003). On its face, Ordinance 05-21 is intended to address negative secondary effects, not speech and is therefore subject to only intermediate scrutiny. *See, e.g., City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 448 (2002) (Kennedy, J., concurring in the judgment);[5] *Zibtluda, LLC v. Gwinnett County, Ga.*, 411 F.3d 1278, 1285-86 (11th Cir. 2005).

---

[5] Pursuant to *Marks v. United States*, Justice Kennedy's concurring opinion is the holding of the Supreme Court in *City of Los Angeles v. Alameda Books. See Peek-A-Boo*, 337 F.3d at 1264.

Similarly, Plaintiffs do not argue that the nudity restrictions subject to the *O'Brien* test are outside the County's power to enact, are related to the suppression of free expression, or are not narrowly tailored. *See Daytona Grand*, 490 F.3d at 873 (applying *O'Brien* test to three nudity ordinances, one of which specifically governed adult businesses); *but see Fly Fish*, 337 F.3d at 1308-09 (applying *Renton* test to nudity ordinance specifically governing adult businesses).[6]

Plaintiffs' constitutional challenge focuses solely on the third part of the *Renton* test and the second part of the *O'Brien* test. The two inquiries, whether the ordinance "is designed to serve" a substantial government interest (*Renton*) and whether the ordinance "furthers" a substantial government interest (*O'Brien*), are "virtually indistinguishable." *Daytona Grand*, 490 F.3d at 874 n.20. It has been "clearly established that reducing the secondary effects associated with adult businesses is a substantial government interest that must be accorded high respect." *Id.* at 874 (quotation marks omitted). Whether the ordinance is "designed to serve" or "furthers" that interest requires application of a burden-shifting test.

The County "bears the initial burden of producing evidence that it relied upon to reach the conclusion that the ordinance furthers the [County's] interest in reducing secondary effects." *Id.* at 875. Plaintiffs may then attempt to "cast direct doubt" on the County's rationale for enacting the ordinance. *Id.* If Plaintiffs succeed, "the burden shifts back to the [County] to supplement the record with evidence renewing support for a theory that justifies its ordinance." *Id.* at 876.

### *1. Did the County carry its initial burden of producing pre-enactment evidence reasonably believed to be relevant to its rationale for enacting Ordinance 05-21?*

There must be pre-enactment evidence which the County reasonably believed was relevant to combating negative secondary effects associated with sexually oriented businesses. *Id.* The County

---

[6] Because Plaintiffs challenge the ordinance on one limited ground which is subject to the same analysis under *Renton* and *O'Brien*, the result is the same under either test.

is not required to "conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the [County] relies upon is reasonably believed to be relevant to the problem that the [County] addresses." *Id.* at 875 (quoting *Alameda Books*, 535 U.S. at 451 (Kennedy, J., concurring)). Likewise, the County is not required to obtain or rely upon evidence specific to each type of business to be regulated. *See Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 584 (1991) (Souter, J., concurring in the judgment) (findings of secondary effects in adult theaters appropriately extended to nude dancing establishments).[7] Although "shoddy data or reasoning" are insufficient, the County is not restricted to empirical evidence or scientific studies. *See Daytona Grand*, 490 F.3d at 881. The County need only "advance some basis to show that its regulation has the purpose and effect of suppressing secondary effects, while leaving the quantity and accessibility of speech substantially intact." *Alameda Books*, 535 U.S. at 449 (Kennedy, J., concurring). The ordinance must meet the evidentiary threshold described in *Renton* and *Alameda Books,* be "narrowly tailored" to serve the government interest, and allow for reasonable alternative avenues of expression. *Peek-A-Boo*, 337 F.3d at 1266.

The vast legislative record in the instant case contains prior judicial opinions, reports and studies prepared for other municipalities, research and testimony of expert witnesses, newspaper articles, and affidavits from a private investigator who visited sexually oriented businesses in Manatee County, including Plaintiffs' businesses. (Dkt. 32-2 – Dkt. 37-16). The County appropriately relied on these forms of evidence, as well as common sense and the local knowledge of the Board members. *See Daytona Grand*, 490 F.3d at 875, 881. The Board's finding that sexually oriented businesses are associated with "personal and property crimes, public safety risks, prostitution, potential spread of

---

[7] Pursuant to *Marks v. United States*, Justice Souter's concurring opinion is the holding of the Supreme Court in *Barnes v. Glen Theatre. See Peek-A-Boo*, 337 F.3d at 1260.

disease, lewdness, public indecency, illicit sexual activity, illicit drug use and drug trafficking, undesirable and criminal behavior associated with alcohol consumption, negative impacts on surrounding properties, litter, and sexual assault and exploitation" is well-supported in the extensive legislative record. Manatee County, Fla. Code of Ordinances § 2-2.5-1(b)(1). The County submitted significantly more than the "very little evidence" required and has therefore carried its initial burden. *See Alameda Books*, 535 U.S. at 451 (Kennedy, J., concurring).

### 2. *Did Plaintiffs cast direct doubt on the County's rationale for Ordinance 05-21?*

"The municipality's evidence must fairly support the *municipality's* rationale for its ordinance. If plaintiffs fail to cast direct doubt on *this* rationale, either by demonstrating that the municipality's evidence does not support *its* rationale or by furnishing evidence that disputes the *municipality's* factual findings, the municipality meets the standard set forth in *Renton.*" *Alameda Books*, 535 U.S. at 438-39 (plurality opinion) (emphasis added); *id.* at 439 (explaining that "actual and convincing evidence" is necessary); *Peek-A-Boo*, 337 F.3d at 1269. To satisfy their burden, Plaintiffs must "cast direct doubt on *all* of the evidence that the [County] reasonably relied on when enacting the challenged ordinance[]." *Daytona Grand*, 490 F.3d at 884 (emphasis added); *see also Alameda Books*, 535 U.S. at 435-36 (plurality opinion) (upholding city's ordinance based on evidence of crime even though evidence of diminished property values was inconclusive). Plaintiffs rely on several affidavits in an effort to impugn the County's rationale.

To address the County's finding of a correlation between sexually oriented businesses and crime, Plaintiffs rely on the affidavits of Drs. Fisher and Danner. Dr. Fisher critiqued several empirical studies in the legislative record. (Dkt. 45-3). Plaintiffs contend that Dr. Fisher's affidavit demonstrates that the County was not reasonable in relying on these studies. Dr. Fisher did not, however, address any other forms of evidence on which the County reasonably relied.

Dr. Danner examined crime rates in Manatee County. He averred that there was "very insufficient evidence" that two of Plaintiffs' sexually oriented businesses were "uniquely criminogenic environments such that they [we]re generating crime related secondary effects in their areas of location in a way that would be beyond what would be expected from an average bar or nightclub." (Dkt. 31-12 at 18). In reaching this conclusion, Dr. Danner studied incidents of rape, robbery, aggravated assault, burglary, larceny, and motor vehicle theft which were known to Manatee County police. (Dkt. 31-12 at 3). However, Dr. Danner's study of "crimes known to police" did not purport to address the County's finding of a correlation between sexually oriented businesses and other crimes, such as prostitution, lewdness, public indecency, illicit sexual activity, illicit drug use and drug trafficking. Although Dr. Danner also examined "calls for police service" at Plaintiffs' businesses, the Eleventh Circuit has discounted the value of this evidence in casting doubt on findings of these secondary effects which often do not result in calls for police service. *See Daytona Grand*, 490 F.3d at 882-83.

Plaintiffs submitted affidavits from two additional expert witnesses, Mr. Schauseil and Dr. Hanna. However, Plaintiffs' brief does not cite, reference, rely upon or contain any argument related to either affidavit. Schauseil averred that Plaintiffs' businesses do not negatively impact property values or building permit applications in the surrounding commercial area. (Dkt. 45-6 at 3-5). Dr. Hanna provided an extensive history of exotic dance as art. (Dkt. 45-4). She offered the opinion that the ordinance's restrictions on nudity, proximity, and touching of patrons would suppress the expressive message of the dance performance.[8] (Dkt. 45-4 at 62). Dr. Hanna also questioned the

---

[8] Plaintiffs do not argue that the ordinance suppresses the dancer's expressive message. The County argues, and Plaintiffs do not dispute, that similar ordinances have been upheld as constitutional. *See, e.g., Pap's A.M.*, 529 U.S. at 301 (plurality opinion) (upholding requirement of pasties and G-string); *Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1363-65 (11th Cir. 1999) (upholding hours limitations and 1000 ft. room requirement); *Artistic Entm't, Inc. v. City of Warner Robbins,* 331 F.3d 1196, 1199 (11th Cir. 2003) (alcohol ban previously upheld); *Fantasy Ranch Inc. v. City of Arlington*, 459 F.3d 546, 562-63 (5th Cir. 2006) (upholding requirement for performers to remain six feet away from patrons); *City of Littleton v. Z.J. Gifts D-4, L.L.C.,* 541 U.S. 774, 783 (2004) (licensing requirements upheld as constitutional).

reliability of two secondary effects reports from insiders of sexually oriented businesses.

Relying on their experts' opinions, Plaintiffs argue that sexually oriented businesses have no greater correlation with secondary effects than other types of businesses. However, the County expressly stated that its rationale for the ordinance existed "independent of any comparative analysis between sexually oriented and non-sexually oriented businesses." § 2-2.5-1(b)(2). Evidence that other businesses also experience secondary effects does little to cast doubt on the secondary effects associated with sexually oriented businesses. Nor does it render regulation of Plaintiffs' businesses arbitrary, discriminatory, or unreasonable. The County may regulate secondary effects in sexually oriented businesses, including Plaintiffs', notwithstanding the existence of secondary effects in other types of businesses. *See Renton*, 475 U.S. at 52-53.

In addition to filing affidavits, Plaintiffs attempt to cast doubt on the County's rationale by arguing that the County was not reasonable in relying on certain types of evidence. Plaintiffs argue that the County should have relied exclusively on empirical evidence or scientific studies which would satisfy a *Daubert* inquiry.[9] The Eleventh Circuit has rejected this argument. *See Daytona Grand*, 490 F.3d at 881. Therefore, Plaintiffs' burden is not satisfied simply by casting doubt on some of the empirical evidence and studies on which the County relied. Plaintiffs must also demonstrate that the rationale for the ordinance was not supported by the other evidence in the legislative record, such as prior judicial opinions, newspaper articles, affidavits, the Board's local knowledge, and common sense.

---

[9] As a practical matter, the legislature is not limited to considering evidence that would be admissible under the Federal Rules of Evidence. By its very nature, a public hearing as part of the legislative process is not the same as court hearing. The legislature has discretion to rely on all forms of evidence, including the concerns of its citizens, its own experience, and common sense. *See Daytona Grand*, 490 F.3d at 875, 881.

As part of their "as applied" challenge, Plaintiffs appear to argue that the County's evidence of secondary effects must be sufficiently specific to their businesses. Plaintiffs contend that the County relied on studies which improperly commingled adult dancing establishments with other types of sexually oriented businesses. However, Plaintiffs have conceded that "the *Daytona Grand* case really essentially does away with the as applied argument." (Dkt. 66-2, Status Conf. Tr. 6:8-10 (Jan. 15, 2008)). Moreover, the County is not precluded from relying on studies of other types of sexually oriented businesses in concluding that similar secondary effects are correlated with establishments such as the Plaintiffs'. *See Barnes*, 501 U.S. at 584 (Souter, J., concurring) ("The type of entertainment respondents seek to provide is plainly of the same character as that at issue in *Renton*, *American Mini Theatres*, and *LaRue*. It therefore is no leap to say that live nude dancing of the sort at issue here is likely to produce the same pernicious secondary effects as the adult films displaying 'specified anatomical areas' at issue in *Renton*."). Plaintiffs have not demonstrated that the County's reliance on evidence related to businesses other than adult dancing establishments was unreasonable or that this evidence is inapplicable to adult dancing establishments.

Plaintiffs have failed to cast direct doubt on the County's rationale for enacting Ordinance 05-21. Plaintiffs did not address all of the evidence supporting the County's finding of a correlation between sexual oriented businesses and prostitution, the potential spread of disease, lewdness, public indecency, illicit sexual activity, illicit drug use and drug trafficking, undesirable and criminal behavior associated with alcohol consumption, and litter. Nor did Plaintiffs furnish evidence sufficient to call into question each of these factual findings. Plaintiffs have therefore failed to satisfy their burden of casting direct doubt on the County's rationale for the ordinance.

The Circuit Court's concern in the prior *Peek-A-Boo* action, that the County relied on "speculative findings and outdated, foreign studies whose relevance to local conditions appears

13

questionable in light of current data," is not implicated here. *Peek-A-Boo*, 337 F.3d at 1272. In that case, the adult businesses cast direct doubt on the County's rationale by submitting recent local evidence suggesting that their businesses did not cause the secondary effects the County sought to address. Here, despite arguing that the ordinance is unconstitutional "as applied" to them, Plaintiffs have not submitted any evidence, local or otherwise, to suggest that there is no correlation between their businesses and each of the secondary effects the County sought to address.[10] In the absence of such evidence, Plaintiffs have failed to cast direct doubt on the County's rationale, notwithstanding that some of the County's evidence appeared in older foreign studies or was contained in judicial findings in cases from other jurisdictions. *See, e.g., Daytona Grand*, 490 F.3d at 875 (city need not "conduct new studies or produce evidence independent of that already generated by other cities"). Moreover, as noted, Plaintiffs conceded after filing their opposition that their "as applied" challenge is foreclosed by *Daytona Grand*.

Significantly, the information contained in Plaintiffs' affidavits already appears in the legislative record. Prior to the enactment of Ordinance 05-21, Plaintiffs' experts supplied the Board with opinions and studies suggesting that sexually oriented businesses do not cause secondary effects. The County's experts provided contrary opinions and reports indicating that sexually oriented businesses do cause secondary effects. The experts on both sides critiqued the opposing studies and opinions. Dr. Richard McCleary provided the Board with the opinion that Dr. Fisher's methodological criticisms of the empirical studies in the legislative record were "small," did not "bias the study in favor of an adverse secondary effect finding," and were not sufficient "to categorically invalidate any study's finding." (Dkt. 32-11 at 11-12). Dr. McCleary also noted that Dr. Danner's study of crime rates in Manatee County contained "fundamental violations of statistical assumptions." (Dkt. 32-11 at 12-

---

[10] The County submitted affidavits describing several secondary effects in Plaintiffs' businesses.

14

14). Shawn Wilson, a licensed real estate appraiser, provided the Board with the opinion that Schauseil did not compare the property values in the areas surrounding Plaintiffs' businesses with sufficiently similar commercial areas. (Dkt. 32-12 at 1). Wilson also opined that Schauseil's methodology was "problematic." (Dkt. 32-12 at 1). Unlike the prior *Peek-A-Boo* action, this is a case involving "a battle of competing experts." *Peek-A-Boo*, 337 F.3d at 1272.

At most, the studies and affidavits on which Plaintiffs rely suggest that the County could have reasonably reached a different conclusion. However, Plaintiffs' evidence does not cast direct doubt on the County's rationale for the ordinance, even at the summary judgment stage. *See Daytona Grand*, 490 F.3d at 881-82. The inquiry is whether *the County's* rationale for the ordinance was reasonable, not whether the County was presented with conflicting evidence which could also support a different reasonable conclusion. *See id.*; *5634 East Hillsborough Ave., Inc. v. Hillsborough County, Fla.,* 294 F. App'x 435, 437 (11th Cir. 2008). The Eleventh Circuit has clearly instructed that this Court cannot substitute its judgment for the County's, even if Plaintiffs were to have succeeded in demonstrating that another conclusion was also reasonable. *See Daytona Grand*, 490 F.3d at 881-82. Plaintiffs' affidavits are therefore insufficient to demonstrate a genuine issue of material fact. Plaintiffs have not cast direct doubt on the County's rationale for enacting Ordinance 05-21.

In summary, the County was presented with conflicting expert opinions concerning the accuracy and applicability of the studies and reports in the legislative record. After considering all of the evidence and testimony, the County resolved these conflicts and determined there was a relationship between sexually oriented businesses and adverse secondary effects. The record contains no basis to reverse that determination. The County's rationale for the ordinance was reasonable.[11]

---

[11] This case was stayed during the pendency of an appeal in *5634 East Hillsborough Ave., Inc. v. Hillsborough County, Fla.*, which Plaintiffs described as "an almost identical legislative challenge." (Dkt. 57, ¶ 4). The legislative records were "very similar." (Dkt. 66-2, Status Conf. Tr. 9:25-10:6 (Jan. 15, 2008)). Both cases involved the same expert

### 3. *Did the County supplement the record with evidence renewing support for Ordinance 05-21?*

Perhaps anticipating that Plaintiffs could conceivably carry their burden, the County came forward with post-enactment evidence of secondary effects which renewed support for its ordinance. *See Daytona Grand*, 490 F.3d at 885 n.35 (post-enactment evidence may be considered in determining renewed support for the ordinance). The County filed affidavits from a private investigator which described incidents of lewdness, illicit sexual activity, and an offer of prostitution occurring in Plaintiffs' businesses.[12] (Dkt. 31-5). The County also filed an affidavit and application for search warrant signed by two detectives of the Manatee County Sheriff's Office. The affidavit described numerous incidents of criminal activity at one of Plaintiff's establishments. (Dkt. 31-6). Notwithstanding Plaintiffs' argument that their businesses do not cause or experience secondary effects, Plaintiffs have not offered any rebuttal to the County's post-enactment evidence. This evidence drawn from Plaintiffs' businesses relates directly to specific secondary effects the County sought to prevent and therefore renews support for Ordinance 05-21.

### 4. *Plaintiffs' remaining challenges*

Plaintiffs allege in their complaint that the ordinance is unconstitutional on several additional grounds. Defendant's summary judgment motion challenged these remaining grounds. However, Plaintiffs failed to respond to Defendant's challenges to their claims of unconstitutional vagueness or

---

witnesses. *See 5634 East Hillsborough Ave., Inc. v. Hillsborough County, Fla.*, No. 8:06-cv-1695-T-26EAJ, 2007 WL 2936211 (M.D. Fla. Oct. 4, 2007). Plaintiffs conceded that "the legal issues are virtually identical" and the Eleventh Circuit's decision would "be pretty decisive on most if not all of the arguments that we raise." (Dkt. 66-2, Status Conf. Tr. 5:5-19 (Jan. 15, 2008)). The Circuit Court upheld the ordinance as constitutional: "[W]e conclude that the County met its evidentiary burden to show that its ordinances have the purpose and effect of suppressing secondary effects. We conclude that appellants have pointed to no evidence that would create a genuine issue of fact as to whether the County was reasonable in relying on their evidence and their rationale that the ordinances would reduce secondary effects." *5634 East Hillsborough Ave., Inc.,* 294 F. App'x at 437.

[12] One of the businesses the investigator visited was "Pandora's Box." He averred that this establishment was formerly known as "Cleopatra's." It is unclear whether this business is still operated by one of the Plaintiffs.

overbreadth. Similarly, notwithstanding their allegations that Ordinance 05-21's licensing provisions lacked procedural safeguards or delegated legislative or judicial authority to administrative employees, Plaintiffs failed to respond to Defendant's arguments concerning the constitutionality of the licensing provisions.

The remaining grounds in Plaintiffs' complaint are meritless. Plaintiffs' takings claim fails because the ordinance does not deny Plaintiffs of all economically beneficial or productive uses of their properties. *See Agripost, Inc. v. Miami-Dade County, ex rel. Manager*, 195 F.3d 1225, 1231 (11th Cir. 1999). Plaintiffs' reliance on the Equal Protection Clause adds nothing to their First Amendment challenge. *See Renton*, 475 U.S. at 55 n.4 ("As should be apparent from our preceding discussion, respondents can fare no better under the Equal Protection Clause than under the First Amendment itself."). Moreover, as discussed, the application of the ordinance to Plaintiffs is not arbitrary, discriminatory, or unreasonable. Plaintiffs' assertion that the ordinance was outside the County's police powers fails. *See Peek-A-Boo*, 337 F.3d at 1269. Likewise, the ordinance's prohibition on the sale or consumption of alcohol in sexually oriented businesses is not unconstitutional. *See, e.g., Daytona Grand*, 490 F.3d at 876, 885-86. Nor does the ordinance infringe upon any right to free association. Ordinance 05-21 does not impact any right to "maintain certain intimate human relationships" or any "right to associate for the purpose of engaging in those activities protected by the First Amendment." *See, e.g., Gary v. City of Warner Robins, Ga.*, 311 F.3d 1334, 1338 (11th Cir. 2002). Because Ordinance 05-21 is constitutional under *Renton* and *O'Brien*, Plaintiff's assertion that the ordinance amounts to a "spectre of repression" must be rejected. Plaintiffs' remaining grounds have already been addressed and are without merit.

## *Conclusion*

Plaintiffs' contention that they have raised sufficient evidence to create a genuine issue of

material fact has been carefully considered by the Court consistent with the summary judgment standards articulated in *Celotex Corp. v. Catrett*. Having drawn all reasonable inferences in favor of the non-moving party, the Court finds Plaintiffs' evidence insufficient to "create a genuine issue of fact as to whether the County was reasonable in relying on their evidence and their rationale that the ordinance[] would reduce secondary effects." *5634 East Hillsborough Ave., Inc.*, 294 F. App'x at 437. Plaintiffs have simply submitted evidence which conflicts with some, but not all, of the County's pre-enactment evidence related to some, but not all, of the secondary effects the County sought to prevent. At most, Plaintiffs evidence may suggest that the County could have reached a different reasonable conclusion. However, Plaintiffs have not cast direct doubt on the County's rationale for enacting Ordinance 05-21 or the aggregate of evidence on which the County reasonably relied in enacting the ordinance. Moreover, the County submitted post-enactment evidence sufficient to renew support for the ordinance. The ordinance therefore "is designed to serve" a substantial government interest pursuant to *Renton* and "furthers" a substantial government interest pursuant to *O'Brien*. In sum, Ordinance 05-21 is constitutional on its face and as applied to Plaintiffs.

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's motion for summary judgment (Dkt. 31) is **GRANTED.** All pending motions, including Defendant's motion to strike (Dkt. 47), are **DENIED** as moot. The clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in chambers this 25th day of November, 2009.

/s/ *James D. Whittemore*
**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record

18